IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GARY DEBENEDETTO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13-cv-07604 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| ANTONIO SALAS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gary DeBenedetto, a federal prisoner, has filed this lawsuit under 42 U.S.C. § 1983 against Lieutenant Antonio Salas, Lieutenant Patrick Barber, and Correctional Officers Steve Bynam, Herman Hoover, Raphael Brownfield, and Errol Matthews (together, "Defendants"), all correctional officers at the Metropolitan Correctional Center ("MCC") in Chicago, Illinois, alleging violations of his Eighth Amendment and Fifth Amendment rights. Before the Court are Defendants' motions to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 41(b), in which they argue that DeBenedetto failed to exhaust his administrative remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), that certain claims are time-barred, and that the case should be dismissed for want of prosecution. (Dkt. Nos. 95, 103.) Alternatively, Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendants' motions are denied.

**BACKGROUND**

At the motion to dismiss stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Because Defendants have moved alternatively for summary judgment, and as discussed below, the Court treats this motion as one for summary judgment as to the exhaustion issue, the Court construes disputed facts in the light most favorable to DeBenedetto as the nonmoving party. *See Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016) (describing the standard of review at the summary judgment stage).

As alleged in the Fifth Amended Complaint, DeBenedetto was arrested on April 11, 2012 for communicating threats to various people, and he was initially detained in a special housing unit ("SHU") at the Federal Correctional Institution, Milan ("Milan") in Michigan. (Fifth Am. Compl. ¶¶ 12, 15–16, Dkt. No. 85.)[1] In July 2012, DeBenedetto was transferred to the MCC where all Defendants worked and the events comprising the allegations in the Fifth Amended Complaint allegedly took place. (*Id.* ¶ 21.)

Because DeBenedetto's mental health had deteriorated while he was housed in the SHU at Milan (*id.* ¶ 17), he was placed on a "Psych Alert" upon his arrival at the MCC. (*Id.* ¶ 22.) Lieutenant Antonio Salas and other MCC officials were aware that DeBenedetto previously had been diagnosed with schizophrenia, was taking antidepressant and antipsychotic medications, and had been designated a possible high risk for suicide. (*Id.* ¶¶ 24–26.) After an altercation with a prison official, DeBenedetto was placed in solitary confinement in the SHU on July 19, 2012, and his prescriptions terminated without being renewed. (*Id.* ¶¶ 35–37.) As a result, his mental health rapidly deteriorated. (*Id.* ¶ 48.) In October 2012, an MCC psychologist submitted a report

---

[1] On March 21, 2012, DeBenedetto had been indicted by a grand jury on five counts of knowingly transmitting in interstate commerce a communication containing a threat to injure another person in violation of 18 U.S.C. § 875(c). (Indictment, *United States v. DeBenedetto*, No. 12-cr-00199 (N.D. Ill.), Dkt. No. 1.) A warrant was subsequently issued for his arrest.

concluding that DeBenedetto was not competent to stand trial. (*Id.* ¶ 58.)[2] The report noted that, among other symptoms, DeBenedetto had difficulty following conversations, went through periods of increased agitation and paranoia, and engaged in destructive behaviors. (*Id.* ¶ 58.) DeBenedetto remained in solitary confinement at the MCC until January 7, 2013, when he was transferred to the Federal Medical Center, Butner ("Butner") in North Carolina. (*Id.* ¶¶ 40–41.) Even though DeBenedetto was not housed in solitary confinement at Butner, Salas authorized his immediate assignment to the SHU when he was transferred back to the MCC in June 2013. (*Id.* ¶¶ 44–47.)

With the present lawsuit, DeBenedetto alleges the following claims, all arising from his two stays at the MCC: (1) Salas unlawfully assigned DeBenedetto to prolonged solitary confinement even though it was severely damaging to his mental health; (2) on September 4, 2013, Defendants Lieutenant Patrick Barber and Correctional Officer Steve Bynam removed the mattress and blankets from DeBenedetto's cell for approximately 20 days, and in the process of removing the mattress, either Barber or Bynam broke DeBenedetto's toe by stomping on it; (3) during DeBenedetto's entire stay at the MCC, Defendant Correctional Officer Herman Hoover provided him with almost no opportunity to engage in physical activity, did not allow him to shower or shave for months at a time, and denied him grievance forms when he requested them on various occasions; and (4) on various occasions, Defendant Correctional Officers Raphael Brownfield and Errol Matthews denied DeBenedetto's requests for grievance forms so that he could grieve about his conditions of confinement. DeBenedetto claims that these actions violated his rights under the Fifth and Eighth Amendments to the United States Constitution.

---

[2] On August 13, 2014, the pending criminal charges against DeBenedetto were dropped, but he remained civilly committed for mental-health treatment based on a finding that he posed a risk of future violence. *See United States v. DeBenedetto*, 618 F. App'x 751 (4th Cir. 2015).

DeBenedetto filed his original complaint *pro se* in October 2013, during his second stay at the MCC (Dkt. No. 1). This was followed in quick succession by his First, Second, and Third Amended Complaints. (Dkt. Nos. 4, 8, 12.) On March 3, 2014, this Court accepted DeBenedetto's Third Amended Complaint for filing, granted DeBenedetto leave to proceed *in forma pauperis*, and recruited counsel to represent him. (Dkt. No. 14.) Debenedetto's first recruited counsel withdrew from the representation on February 3, 2016 (Dkt. No. 32), and over the next two-and-a-half years, as DeBenedetto was transferred to various federal facilities across the county, three additional recruited counsel were assigned to his case and then withdrew for various reasons (Dkt. Nos. 51, 59, 71). For a period of time in 2017, Debenetto was both unrepresented and had been out of touch with the Court for a substantial period of time. Accordingly, this Court issued an order requiring DeBenedetto to inform the Court whether he intended to continue with his case; Debenedetto confirmed that he did. (*See* Dkt. Nos. 52, 53, 62.) On September 26, 2018, this Court recruited DeBenedetto's current counsel to represent him, and they subsequently prepared and filed DeBenedetto's Fourth and Fifth Amended Complaints. (*See* Dkt. Nos. 73, 85). His Fifth Amended Complaint is now the operative complaint and the subject of Defendants' present motions.

## DISCUSSION

Defendants raise three arguments for dismissal of the Fifth Amended Complaint: first, they claim that DeBenedetto failed to exhaust his administrative remedies before filing suit; second, they contend that his newly-added claims against Defendants Brownfield, Hoover, and Matthews are time-barred; and third, they claim that DeBenedetto has failed to prosecute his case diligently.

In addition to invoking Rule 12(b)(6) and 41(b), Defendants also move in the alternative for summary judgment under Rule 56. In general, if the Court looks to matters outside the pleadings in deciding a motion to dismiss, it must treat it as a motion for summary judgment. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Here, the parties submitted statements of material facts in accordance with Northern District of Illinois Local Rule 56.1(a)(3), upon which the Court relies in deciding the exhaustion issue. Therefore, the Court treats Defendants' motions as motions for summary judgment as to that issue. As discussed above, at the summary judgment stage, the Court construes all disputed facts in favor of DeBenedetto as the nonmoving party. *Hernandez*, 814 F.3d at 840. The Court may grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## I. Exhaustion of Administrative Remedies

The PLRA requires that inmates exhaust all available administrative remedies prior to filing an action regarding prison conditions in federal court. 42 U.S.C. § 1997e(a). Section 1997e(h) clarifies that the PLRA applies to pre-trial detainees like DeBenedetto, as well as to convicted prisoners.

"Exhaustion is a threshold that must be resolved by the district judge prior to addressing the merits of the case." *Johnson-Ester v. Elyea*, No. 07-cv-4190, 2009 WL 632250, at *1 (N.D. Ill. Mar. 9, 2009) (citing *Pavey v. Conley*, 544 F.3d 739, 741–42 (7th Cir. 2008)). Because the assertion that a plaintiff failed to exhaust his administrative remedies is an affirmative defense,

defendants carry the burden of proof. *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2008) (citing *Hernandez*, 814 F.3d at 840). At the summary judgment stage, "defendants must show beyond dispute that remedies were available." *Id.* at 534 (citing *Hernandez*, 814 F.3d at 840). The Supreme Court has noted three circumstances in which prisons may have an official administrative procedure for inmates to submit grievances, but such procedure nonetheless is not "available" under the PLRA: first, the procedure is essentially a dead end, through which inmates consistently fail to get relief; second, the administrative procedure is so complicated and opaque that a typical prisoner could not navigate it; and third, prison officials actively thwart inmates' attempts to take advantage of the procedure. *Ross v. Blake*, 136 S. Ct. 1850, 1853–54 (2016). The Seventh Circuit has advised that "these were only examples, not a closed list." *Ramirez*, 906 F.3d at 538.

DeBenedetto does not dispute that he never filed grievance forms through MCC's official administrative procedure. (Pl.'s Local Rule 56.1(b)(3) Resp. to Defs.' Statement of Facts ("PRDSOF") ¶ 15, Dkt. No. 114.) But DeBenedetto has attested that on various occasions when he was in solitary confinement at the MCC, he requested grievance forms from Brownfield, Hoover, and Matthews, who were then correctional officers, and they refused. (*Id.* ¶ 21 (citing PRDSOF, Ex. A, Decl. of Gary DeBenedetto ¶ 9, Dkt. No. 114-1).) In declarations submitted in support of their motion, Defendants have all stated that they "do not recall" DeBenedetto requesting such forms. (Defs. Salas, Brownfield, and Matthews's Rule 56.1(a)(3) Statement of Facts, Ex. 7, Decl. of Raphael Brownfield ¶ 3, Dkt. No. 99-1; *id.* Ex. 8, Decl. of Errol Matthews ¶ 3, Dkt. No. 99-1; Defs. Barber and Hoover's Rule 56.1(a)(3) Statement of Facts, Ex. 9, Decl. of Herman Hoover ¶ 3, Dkt. No. 105). This discrepancy constitutes a genuine dispute as to the material question of whether prison officials actively thwarted DeBenedetto's attempts to take

6

advantage of the MCC grievance procedure, which fits the third example of unavailability provided in *Ross*. 136 S. Ct. at 1853–54.[3]

Defendants contend that even if DeBenedetto had requested grievance forms from Brownfield, Hoover, and Matthews and they refused, he still failed to exhaust his administrative remedies. (Salas, Brownfield, and Matthews's Mem. in Supp. of Defs.' Mot. to Dismiss or Alternatively for Summ. J. ("Salas, Brownfield, and Matthews's Mem.") at 10–11, Dkt. No. 96; Barber and Hoover's Mem. in Supp. of Defs. Mot. to Dismiss or Alternatively for Summ. J. ("Barber and Hoover's Mem.") at 10, Dkt. No. 104). Federal Bureau of Prisons ("BOP") regulations require an inmate to "date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor)." (Salas, Brownfield, and Matthews's Mem. at 10; Barber and Hoover's Mem. at 10 (both quoting 28 C.F.R. 542.14(c)(4)).) Defendants contend that because Brownfield, Hoover, and Matthews were all correctional officers, not counselors, they were not responsible for providing grievance forms to prisoners. But the Seventh Circuit has held that in order for prison officials to successfully assert a failure to exhaust affirmative defense, the prison must take "reasonable steps to inform the inmates about the required procedures." *Ramirez*, 906 F.3d at 538 (citing *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000)). Defendants have not adduced any facts to show that the prison

---

[3] In his response brief, DeBenedetto contends that the Court should grant summary judgment in his favor because Defendants' statements denying recollection of DeBenedetto asking for forms fail to create a genuine issue of fact. (Pl.'s Mem. in Opp'n to Defs.' Mots. to Dismiss or Alternatively for Summ. J. at 1 n.2, 9–10, Dkt. No. 113) (citing to *Chambers v. Troy-Bilt, LLC*, 687 F. App'x 401, 403 (5th Cir. 2017); *Keating v. Pittston City*, 643 F. App'x 219, 224 (3d Cir. 2016); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 674 (10th Cir. 1998). DeBenedetto's cited cases are primarily unpublished and all outside the Seventh Circuit. But more importantly, they are inapposite to the facts of this case. In each cited case, the court held that the plaintiff's inability to recall a material fact upon which his or her case relied failed to create a genuine dispute of fact, and thus, granted summary judgment in the defendant's favor. Here, Defendants' assertions that they do not remember DeBenedetto requesting grievance forms constitute denials of his allegations. In the Court's view, that denial creates a dispute of a material fact and summary judgment is not warranted in either party's favor.

informed DeBenedetto or any other inmates of BOP grievance procedures, apart from stating that BOP regulations would have been available on the computer in the law library. (Reply in Supp. of Defs.' Mots. to Dismiss or Alternatively for Summ. J. at 6, Dkt. No. 119.)

At least one other court in this District has rejected the argument that published government regulations, such as the BOP regulations, are sufficient to inform prisoners of administrative policies. In *Payne v. United States Marshals Service*, No. 15-cv-5970, 2018 WL 3496094, at *3 (N.D. Ill. July 20, 2018), the court denied the defendants' motion for summary judgment based on a purported failure to exhaust, holding that the plaintiff "did not need to scour the Code of Federal Regulations," and was "only required to exercise 'reasonable diligence' in attempting to exhaust his remedies, which he satisfied by inquiring into remedies with multiple individuals." This Court agrees. In the absence of any other facts showing that the MCC informed DeBenedetto of BOP regulations, the Court finds it reasonable for him to ask correctional officers for grievance forms. While such officers may not be responsible for handing out grievance forms, they could have referred DeBenedetto to the correct individuals, passed on his messages, or pointed him to the relevant BOP regulations. Therefore, DeBenedetto's assertion that he asked for grievance forms from Brownfield, Matthews, and Hoover, and that they refused, creates a genuine dispute as to the material issue of whether he exhausted all of his available administrative remedies.

When the facts regarding exhaustion are contested, the district court must hold an evidentiary hearing to decide the issue, permitting whatever discovery it deems appropriate. *Pavey,* 544 F.3d at 742. Here, the parties contest whether DeBenedetto ever asked Brownfield, Matthews, and Hoover for grievance forms and whether those Defendants denied such requests. The parties also disagree as to whether DeBenedetto was aware of the MCC's grievance

procedure (*see* Defs.' Resp. to Pl.'s Statement of Additional Facts ¶¶ 8–9, Dkt. No. 120), and whether he was capable of navigating that procedure given his mental health issues. (*Id.* ¶ 36.) These disputed factual issues must be resolved at a *Pavey* hearing. *See Roberts v. Neal,* 745 F.3d 232, 234 (7th Cir. 2014) ("A swearing contest requires an evidentiary hearing to resolve . . . .") "At the *Pavey* hearing, a judge is empowered to resolve factual disputes pertaining to exhaustion and to make credibility determinations about the witnesses." *Hicks v. Irvin,* No. 06–cv–645, 2011 WL 2213721, at *7 (N.D. Ill. June 7, 2011).Therefore, the Court denies Defendants' motions for summary judgment based on DeBenedetto's failure to exhaust. If Defendants intend to proceed with this affirmative defense, the parties may engage in discovery on the exhaustion issue and the Court will schedule an evidentiary hearing pursuant to *Pavey*, 544 F.3d at 742, to determine the disputed factual issues.

## II.     Defendants' Denial of DeBenedetto's Requests for Grievance Forms

Defendants contend that DeBenedetto's newly-added claims against Brownfield, Hoover, and Matthews alleging that they denied his requests for grievance forms, which he brings for the first time in his Fifth Amended Complaint, are untimely and should be dismissed. DeBenedetto asserts in response that "these statements were added to the Fifth Amended Complaint in anticipation of Defendants pleading an affirmative defense of failure to exhaust administrative remedies—they are not new claims in any sense." (Pl.'s Mem. in Opp'n to Defs.' Mots. to Dismiss or Alternatively for Summ. J. ("Pl.'s Mem. in Opp'n") at 13, Dkt. No. 113.) In the alternative, DeBenedetto argues that even if the Court considers these statements to constitute new claims, they relate back to his original complaint. (*Id.* at 14–15.) The Court does not find it necessary to reach the merits of the parties' timeliness arguments. To the extent the new

allegations might be construed as separate claims, those claims are properly dismissed for failure to state a claim.

Because DeBenedetto originally filed this action *in forma pauperis*, the Court may dismiss any of his claims at any time upon a determination that the claim is frivolous, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). To the extent DeBenedetto does intend to assert that Defendants Brownfield, Hoover, and Matthews violated either his Fifth or Eighth Amendment rights by refusing to provide him grievance forms, those claims fail as a matter of law. The Seventh Circuit has held that prison grievance procedures "do not in and of themselves create cognizable liberty or property interests." *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001). The PLRA requires inmates to exhaust any available administrative remedies prior to filing cases in federal court, but it does not mandate that prisons provide inmates with grievance procedures. 42 U.S.C. §§ 1997e(a)–(b). Therefore, courts in this District have held that the denial of a grievance form alone "does not give rise to a constitutional claim." *Payton v. Grote,* No. 10 C 3069, 2014 WL 4553203, at *8 (N.D. Ill. Sep. 15, 2014); *Jones v. Hardy,* No. 11 C 699, 2012 WL 1133797, at *4 (N.D. Ill. Apr. 4, 2012) ("[T]he lack of a grievance system or the failure of prison officials to adhere to a prison's grievance procedures does not give rise to a separate civil rights claim."). DeBenedetto's allegations that Defendants did not allow him to submit grievances do not, in and of themselves, implicate any violations of constitutionally-protected rights, and therefore, do not state claims for relief. In any case, DeBenedetto himself disclaims any attempt to assert the failure to provide grievance forms as separate causes of action (*see* Pl.'s Mem. in Opp'n at 13), and has

failed to advance any argument in favor of their legal sufficiency. Thus, the Court dismisses these claims against Brownfield, Hoover, and Matthews pursuant to § 1915(e).

The Fifth Amended Complaint does not make any factual allegations against Brownfield and Matthews outside of their refusals to provide DeBenedetto his requested grievance forms. (Fifth Am. Compl. ¶ 77.) While DeBenedetto has denied that these allegations constitute claims, his complaint clearly states that their actions violated his Fifth and Eighth Amendment rights (*Id.* ¶¶ 116–23, 140–47.) Regardless, DeBenedetto has renounced his intent to bring new claims for Defendants' denials of grievance forms and the Court finds that his factual allegations as to those denials fail to state a claim. Because DeBenedetto has not alleged that Brownfield and Matthews were involved in any other facts giving rise to this case, they are dismissed as Defendants.

### III. Want of Prosecution

Lastly, Defendants argue that the Court should dismiss DeBenedetto's entire case for want of prosecution. Federal Rule of Civil Procedure 41(b) allows district courts to grant a defendant's motion to dismiss when the plaintiff has failed to prosecute his case or to comply with court orders. *See* Fed. R. Civ. P. 41(b). Defendants specifically point to DeBenedetto's nearly five-year delay in executing service as demonstrating his failure to prosecute the action diligently and urge the Court to exercise its discretion to dismiss the case.

The Court acknowledges that there was an unusually slow start to DeBenedetto's case, which was exacerbated by DeBenedetto's fluctuating mental-health condition, his frequent transfers to federal facilities in different regions of the country, and the difficulty this Court had in finding an attorney through the Court's pro bono program who was able to handle this case for its duration in spite of the many challenges. The Seventh Circuit has explained that dismissal for want of prosecution is appropriate only in the most extreme circumstances, such as when less

11

drastic sanctions have not been effective. *See Dunphy v. McKee*, 134 F.3d 1297, 1299 (7th Cir. 1998) (reversing dismissal for want of prosecution when the district court had failed to warn the plaintiff of the impending dismissal, and the plaintiff kept the court updated as to the status of his case despite his recruited counsel continually missing deadlines). Here, the Court finds that any failure by DeBenedetto to prosecute the case during certain time periods did not reflect a lack of interest on his part or a deliberate flouting of the Court's orders or procedures. Additionally, the Court expects the case to proceed more smoothly with DeBenedetto's present counsel, who assures the Court that he is working diligently to pursue the case. Therefore, the Court finds it unnecessary and indeed inappropriate to dismiss the case for want of prosecution.

## CONCLUSION

Accordingly, for the reasons discussed above, Defendants' motion for summary judgment based on their affirmative defense of failure to exhaust administrative remedies is denied. The Court finds that there are disputed issues of material fact as to whether DeBenedetto exhausted the remedies available to him that require an evidentiary hearing pursuant to *Pavey*. In addition, the Court dismisses *sua sponte* any claims against Defendants Brownfield, Hoover, and Matthews based on their alleged denial of DeBenedetto's requests for grievance forms. Lastly, the Court denies Defendants' motion to dismiss the case for want of prosecution.

ENTERED:

Dated: June 1, 2020 _____

Andrea R. Wood
United States District Judge