IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GARY DEBENEDETTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13-cv-07604 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| ANTONIO SALAS et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Gary DeBenedetto, a former federal pretrial detainee at the Metropolitan Correctional Center ("MCC") in Chicago, Illinois, has brought the present action for damages against Defendants Antonio Salas, Patrick Barber, and Herman Hoover—correctional officers at the MCC—pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). DeBenedetto alleges violations of his rights under the Fifth Amendment and Eighth Amendment to the United States Constitution. Now before the Court is Defendants' motion to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 210). For the following reasons, Defendants' motion is granted.

**BACKGROUND**

For purposes of Defendants' motion to dismiss, the Court accepts all well-pleaded facts in the Sixth Amended Complaint ("6AC") as true and views those facts in the light most favorable to DeBenedetto as the nonmoving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The 6AC alleges as follows.

On April 11, 2012, DeBenedetto was arrested for transmitting threatening communications to various individuals. (6AC ¶ 9, Dkt. No. 209.)[1] DeBenedetto was originally detained in the special housing unit ("SHU") at the Federal Correctional Institution, Milan ("FCI Milan") in Michigan; there, he experienced significant mental health issues and his psychological condition deteriorated. (*Id.* ¶¶ 12–15.) While at FCI Milan, DeBenedetto was also prescribed antidepressant and antipsychotic medications. (*Id.* ¶ 16.) On July 16, 2012, DeBenedetto was transferred to the MCC. (*Id.* ¶ 17.)

Upon his arrival at the MCC, DeBenedetto remained on a "Psych Alert." (*Id.* ¶ 19.) DeBenedetto's records, which were in the custody of MCC officials, stated that DeBenedetto had been diagnosed with schizophrenia, had exhibited symptoms of schizophrenia such as mania and delusions while at FCI Milan, had been prescribed antidepressant and antipsychotic medications, and had been identified as requiring additional screening to determine if he posed an imminent suicide risk. (*Id.* ¶¶ 19, 21–28.) Thus, Salas, who was Captain of Correctional Services at the MCC and the official responsible for assigning inmates to either general population or the SHU, was aware of the information in DeBenedetto's records. (*Id.* ¶¶ 6, 22–29.) On July 19, 2012, DeBenedetto had an altercation with a correctional officer, where he joked that he would climb over a railing and jump to the unit's main floor; after making this statement, he then moved toward the railing. (*Id.* ¶ 31.) As a result, MCC officials placed DeBenedetto in solitary confinement in the SHU, despite knowing about his mental health problems. (*Id.* ¶¶ 32–33.) MCC officials also failed to renew the prescriptions for his medications. (*Id.* ¶ 34.)

---

[1] The criminal charges against DeBenedetto relating to the April 2012 arrest were eventually dismissed on August 13, 2014. (6AC ¶ 10.)

From July 19, 2012 to January 7, 2013, DeBenedetto remained in solitary confinement at the MCC, but without regular reviews of his placement in the SHU. (*Id.* ¶ 37.) On January 8, 2013, DeBenedetto was transferred to Federal Medical Center, Butner ("FMC Butner") in North Carolina, where he stayed until his transfer back to the MCC on June 3, 2013. (*Id.* ¶¶ 39–40.) Although DeBenedetto was not held in solitary confinement while at FMC Butner, MCC officials—namely, Salas—immediately reassigned him to the SHU. (*Id.* ¶¶ 40, 43, 46.) He remained in solitary confinement until he left the MCC in July 2014, time totaling more than 600 days in solitary confinement over the course of his two stays at MCC. (*Id.* ¶ 41.) During both stays, Defendants never conducted regular reviews of DeBenedetto's placement in the SHU nor did they attempt to find him more suitable housing arrangements. (*Id.* ¶¶ 38, 42, 66.) While in solitary confinement, DeBenedetto had less communication privileges than other inmates, had a less sanitary cell than other inmates, had almost no access to exercise or physical activity, could not shower or shave for months at a time, was deprived of a mattress and blanket for twenty days, and suffered a broken toe after Barber stomped on it. (*Id.* ¶¶ 69–75, 77–78, 80.)

Due to his prolonged solitary confinement, DeBenedetto's mental health rapidly declined, leading him, among other things, to refuse court appearances. (*Id.* ¶¶ 47, 54, 64.) Indeed, in October 2012, an MCC psychologist reported that DeBenedetto was not competent to stand trial, that he suffered from a schizoaffective disorder, and that he displayed several symptoms of mental illness, including paranoia, agitation, destructive behavior, and struggling to follow conversations. (*Id.* ¶ 57.) Further, in a November 2013 memorandum, MCC officials acknowledged that solitary confinement was negatively impacting DeBenedetto and that MCC lacked the ability to provide him with the necessary and appropriate treatments. (*Id.* ¶ 67.) Eventually, in July 2014, DeBenedetto was transferred back to FMC Butner, where he remained

until his transfer to Federal Medical Center, Rochester in Minnesota in September 2016. (*Id.* ¶¶ 83, 85.) At both facilities, DeBenedetto's mental health improved because of his greater access to medical professionals and psychiatric care. (*Id.* ¶¶ 84–86.)

In the present suit, DeBenedetto alleges that Defendants' actions during his two stays at the MCC violated his Eighth Amendment and Fifth Amendment rights. He asserts the following claims: (1) Defendants violated the Eighth and Fifth Amendments by subjecting DeBenedetto to prolonged solitary confinement despite their knowledge of his serious mental illness and that the confinement exacerbated his mental health issues (Counts I, II, III, VII, VIII, and IX); (2) Barber used excessive force against DeBenedetto, in violation of the Eighth Amendment, when he broke DeBenedetto's toe by stomping on it (Count II); (3) Defendants violated the Fifth Amendment by failing to conduct routine status reviews of DeBenedetto's continuous assignment to the SHU (Counts IV, V, and VI); (4) Hoover, in violation of the Eighth and Fifth Amendments, denied DeBenedetto basic hygiene and recreational activities (Counts III and IX); (5) and Salas and Barber, in violation of the Eighth and Fifth Amendments, deprived DeBenedetto of a mattress and blanket for twenty days (Counts I, II, VII, and VIII).

This case has an extensive procedural history. DeBenedetto filed his original complaint *pro se* in October 2013. (Dkt. No. 1.) He then filed his First, Second, and Third Amended Complaints in November 2013 and January 2014. (Dkt. Nos. 4, 8, 12.) After the Court granted DeBenedetto leave to proceed *in forma pauperis* and recruited counsel to represent him in March 2014 (Dkt. No. 14), DeBenedetto then had a series of recruited pro bono counsel—each of whom withdrew for various reasons over the next four years. (Dkt. Nos. 32, 51, 59, 71). In September 2018, the Court recruited DeBenedetto's current counsel; they subsequently filed DeBenedetto's Fourth and Fifth Amended Complaints in December 2018 and April 2019, respectively. (Dkt.

Nos. 71, 73, 85.) In June 2020, the Court denied Defendants' motions to dismiss the Fifth Amended Complaint, or in the alternative, for summary judgment based on DeBenedetto's failure to exhaust his administrative remedies. (Dkt. No. 144.) After conducting an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), in April 2022, the Court denied Defendants' request to dismiss the suit for DeBenedetto's purported failure to exhaust administrative remedies. (4/29/22 Mem. Op., Dkt. No. 181.)

Next, DeBenedetto sought for leave to file a sixth amended complaint. (Dkt. No. 188.) In October 2022, the Court granted in part and denied in part DeBenedetto's motion. (10/12/22 Minute Entry, Dkt. No. 208.) Specifically, the Court denied DeBenedetto's request to add a new Federal Torts Claims Act ("FTCA") claim against the United States, due to DeBenedetto's failure to exhaust his administrative remedies for that claim. (*Id.*) However, the Court granted DeBenedetto's request to add allegations to his Fifth Amendment due process claim against Salas. (*Id.*) DeBenedetto subsequently filed the 6AC (Dkt. No. 209), which is now the operative complaint and the subject of Defendants' current motion.

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Although the Court accepts the plaintiff's well-pleaded factual allegations as true, conclusory allegations will not be sufficient to avoid

dismissal. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Here, Defendants argue that the 6AC must be dismissed for two reasons. First, Defendants contend that the *Bivens* remedy is unavailable for DeBenedetto's claims. Second, Defendants assert that qualified immunity protects them from DeBenedetto's suit.

### I. Availability of *Bivens* Remedy

The Court first addresses Defendants' *Bivens* argument.

In 1871, Congress enacted a statute—now codified as 42 U.S.C. § 1983—that authorized individuals to pursue actions for monetary damages against state officials who violated their constitutional rights. *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017). Yet Congress has not yet enacted a similar statute enabling individuals to seek damages against federal officials for their unconstitutional conduct. *Id.* Nonetheless, the Supreme Court on three occasions has recognized an implied cause of action for damages against federal officials who have violated a person's constitutional rights, including: (1) a Fourth Amendment claim against federal agents for an unreasonable search, arrest, and use of force during a warrantless arrest in a person's home, *Bivens*, 403 U.S. at 389–90, 397; (2) a Fifth Amendment sex discrimination claim against a congressman for firing his female staffer, *Davis v. Passman*, 442 U.S. 228, 234 (1979); and (3) an Eighth Amendment claim against prison officials for failing to provide a prisoner with adequate medical treatment, *Carlson v. Green*, 446 U.S. 14, 16–17 (1980). Since then, the Supreme Court has appeared to shift course with respect to recognizing implied causes of action, now characterizing the expansion of the *Bivens* remedy as a "disfavored judicial activity." *Hernandez v. Mesa*, 140 S. Ct. 735, 741–42 (2020) (internal quotation marks and citation omitted); *see also Cohen v. United States*, No. 21-CV-10774, 2022 WL 16925984, at *9–10

6

(S.D.N.Y. Nov. 14, 2022) (criticizing the Supreme Court's recent reluctance to imply a damages remedy for constitutionally guaranteed rights).

To determine whether a *Bivens* remedy is available, courts must engage in a two-step inquiry. *Egbert v. Boule*, 142 S. Ct. 1793, 1804 (2022); *Hernandez*, 140 S. Ct. at 743; *Ziglar*, 582 U.S. at 139–40. First, a court asks if the claim "presents a new *Bivens* context," meaning that the case is "meaningfully different from the three cases in which the [Supreme] Court has implied a damages action." *Egbert*, 142 S. Ct. at 1804 (internal quotation marks and citation omitted). A non-exhaustive list of meaningful differences from the prior *Bivens* cases include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139–40. A new category of defendants is also a meaningful difference. *Hernandez*, 140 S. Ct. at 743. In short, a difference is meaningful if "it involves a factual distinction or new legal issue that might alter the policy balance that initially justified the implied damages remedies in the *Bivens* trilogy." *Snowden v. Henning*, 72 F.4th 237, 239 (7th Cir. 2023).[2]

---

[2] After the present motion was fully briefed, the Seventh Circuit issued its decision in *Snowden* on June 27, 2023. In *Snowden*, the Seventh Circuit "survey[ed] the evolving *Bivens* landscape" in the wake of the Supreme Court's decision in *Egbert*. 72 F.4th at 239. And it reversed a district court ruling where the lower court had dismissed an arrestee's excessive force claim against a federal narcotics officer under *Bivens* due to the lower court's conclusion that the claim presented a new context and that special factors counseled against the extension of a *Bivens* remedy. *Id.* at 239, 247. Ultimately, the Seventh Circuit held that the arrestee's excessive force claim did not arise in a new context from *Bivens*. *Id.* at 239, 245–46. Moreover, the Seventh Circuit emphasized that "[w]hile the Supreme Court has strictly limited the reach of *Bivens*, it has left the door open for at least some claims to proceed—provided, however, that the claim is not meaningfully different from" the three cases in which the Supreme Court has recognized an implied damages remedy. *Id.* In light of *Snowden*, this Court granted the parties leave to file supplemental submissions regarding Defendants' motion to dismiss. (Dkt. No. 230.)

If a claim arises in a new context, a court then asks whether "there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1804 (internal quotation marks and citation omitted). Separation-of-powers concerns are especially important here. *See Snowden*, 72 F.4th at 244. For instance, Congress's or the Executive Branch's creation of alternative remedial processes for an aggrieved party to vindicate his rights, or legislative action indicating that Congress did not want to create a damages remedy, are such special factors. *See Ziglar*, 582 U.S. at 137, 148. "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Snowden*, 72 F.4th at 242 (quoting *Egbert*, 142 S. Ct. at 1803). At bottom, this two-step framework "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1804. *But cf. Snowden*, 72 F.4th at 245 (noting that despite the Supreme Court's recent suggestion that the two-step framework comes down to a single question, *Bivens* "remains good law").[3]

### A. New Context

Here, DeBenedetto alleges that Defendants violated his Fifth Amendment and Eighth Amendment rights. DeBenedetto asserts what the Court interprets as claims for unconstitutional

---

[3] DeBenedetto primarily argues that *Egbert*, *Hernandez*, and *Ziglar* should not apply because the decisions were issued after the events of this case occurred and after he first filed his original complaint in 2013. But while retroactivity is generally disfavored in the law, "[t]he presumption against retroactive application of legal rules is reversed, however, in the special case where a court furnishes the new rule." *Velasquez-Garcia v. Holder*, 760 F.3d 571, 579 (7th Cir. 2014) (citation omitted). Specifically, whenever "the Supreme Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate" the rule's announcement. *Lund v. City of Rockford*, 956 F.3d 938, 944 (7th Cir. 2020) (quoting *Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993)). As a result, DeBenedetto's argument is unavailing.

conditions of confinement and excessive force under the Fifth Amendment.[4] Specifically, DeBenedetto alleges that Defendants kept him in prolonged solitary confinement despite being aware of his severe mental illness and the deterioration of his mental health while in the SHU, that Hoover denied him access to basic hygiene and recreational activities, that Salas and Barber deprived him of a mattress and blanket for twenty days, and that Barber broke his toe by stomping on it. (6AC ¶¶ 2, 71, 74, 77–80, 94–109, 138–49.) Second, DeBenedetto raises a procedural due process claim under the Fifth Amendment, alleging that Defendants subjected him to prolonged solitary confinement without the regular thirty-day status reviews required by regulations. (*See id.* ¶¶ 110–37.)

The Court finds that these claims present a new context from prior *Bivens* cases. Although *Davis* also involved a Fifth Amendment claim, that case related to allegations of sex discrimination in employment—not a pretrial detainee's allegations of unlawful conditions of confinement, excessive force by prison officials, or denial of required status reviews of placement in solitary confinement. *See Davis*, 442 U.S. at 231, 234–36. Indeed, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743.

---

[4] In the 6AC, DeBenedetto raises claims relating to his alleged conditions of confinement and Barber's alleged use of excessive force under both the Eighth and Fifth Amendments. While Defendants fail to raise this point, the Court recognizes that the Fifth Amendment's Due Process Clause, not the Eighth Amendment, provides the proper constitutional standard for federal pretrial detainees. *See Sides v. City of Champaign*, 496 F.3d 820, 828 (7th Cir. 2007) ("[The Eighth Amendment] does not apply until a suspect has been convicted. The governing standard at the time of arrest is the Fourth Amendment's ban on unreasonable seizures … Between arrest and conviction the Due Process Clause of the Fifth Amendment supplies the standard."); *see also Kingsley v. Hendrickson,* 576 U.S. 389, 400 (2015) ("[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'"). As such, the Court construes DeBenedetto's claims as arising under the Fifth Amendment. *See Stennis v. Armstrong*, No. 18 CV 7846, 2023 WL 1319561, at *6 n.19 (N.D. Ill. Jan. 31, 2023) (refashioning the plaintiff's claim for inadequate medical care as a Fifth Amendment claim, rather than both a Fifth Amendment and Eighth Amendment claim, because she was arrested pursuant to a warrant).

Additionally, *Bivens* and *Carlson* are not analogous to the present circumstances as those cases dealt with alleged violations of the Fourth and Eighth Amendments, which are different constitutional rights than the one implicated here. *See Bivens*, 403 U.S. at 397; *Carlson*, 446 U.S. at 16–17; *cf. Stennis v. Armstrong*, No. 18 CV 7846, 2023 WL 1319561, at *6 (N.D. Ill. Jan. 31, 2023) (concluding that a pretrial detainee's claim for inadequate medical care under the Fifth Amendment arose in a new context because it involved a different constitutional right—specifically, the claim in *Carlson* was based on a prisoner's right to be free from cruel and unusual punishment under the Eighth Amendment and the claim in *Davis* concerned sex discrimination under the Fifth Amendment Due Process clause); *Gonzalez-Loza v. County of Kankakee*, No. 19 C 3046, 2021 WL 5823512, at *3 (N.D. Ill. Dec. 8, 2021) (holding that a pretrial detainee's claim for excessive force under the Fifth Amendment differed factually from *Davis* and implicated a different constitutional right than in *Bivens* and *Carlson*).

Even assuming that the Eighth Amendment governs DeBenedetto's claims for excessive force and unconstitutional conditions of confinement, Supreme Court precedent would still compel this Court to reach the same conclusion because of factual differences between *Carlson* and the present case. As the Supreme Court has emphasized, "even a modest extension is still an extension" for purposes of the new-context inquiry. *Ziglar*, 582 U.S. at 147. In *Carlson*, the plaintiff asserted a claim for deliberate indifference to a serious medical condition under the Eighth Amendment, alleging that prison officials failed to give a prisoner, who was suffering from a severe asthma attack, adequate medical attention. 446 U.S. at 16 n.1. Here, by contrast, DeBenedetto alleges that prison officials used excessive force against him, prison officials deprived him of hygiene and recreational activities, prison officials denied him a mattress and blanket, and prison officials kept him in solitary confinement although they knew of his severe

mental illness and that solitary confinement exacerbated those issues. These are meaningful factual differences. *Cf. Sebolt v. Tyndall*, No. 19-cv-00429-JPH-DLP, 2021 WL 4948959, at *3 (S.D. Ind. Oct. 25, 2021) (determining that a prisoner's claim alleging unconstitutional conditions of confinement, specifically prison officials' failure to provide him with an appropriate mattress, presented a new context from the inadequate medical care claim in *Carlson*); *Mendoza v. Edge*, 615 F. Supp. 3d 163, 170–71 (E.D.N.Y. 2022) (concluding that a prisoner's claim that prison officials subjected him to brutal conditions in the SHU, including denying him telephone and visitation privileges and access to the commissary, arose in a new context); *Ajaj v. Fozzard*, No. 14-CV-01245-JPG, 2023 WL 2989654, at *4 (S.D. Ill. Apr. 18, 2023) (finding that a prisoner's excessive force claim under the Eighth Amendment presented a new context).

While DeBenedetto's allegation about prolonged solitary confinement might be construed as an attempt to raise a claim for deliberate indifference to serious mental health problems, which is somewhat similar to *Carlson*, the claim still presents a new context because DeBenedetto does not allege that the conditions of his solitary confinement caused him to receive inadequate medical care or that he was denied medical treatment. *See Cohen*, 2022 WL 16925984, at *7 (finding that a prisoner's Eighth Amendment claim—alleging that prison officials placed him in dangerous solitary confinement conditions that posed serious health risks—presented a new context from *Carlson* since the "mechanism of injury" was the conditions of confinement rather than deliberate indifference to medical needs); *see also Ziglar*, 582 U.S. at 146–49 (finding that a pretrial detainee's claim against a prison warden for deliberate indifference to abuse by prison guards arose in a new context from the prisoner's claim for deliberate indifference to serious medical needs in *Carlson*).

Similarly, even if DeBenedetto's excessive force claim implicated the Fourth Amendment, the claim still presents a new context from *Bivens*. Notably, the present case involves a different type of officer with a different law-enforcement mandate than the federal narcotics officers enforcing federal drug laws in *Bivens*. *Cf. Snowden*, 72 F.4th at 246 (stating that the officers in *Bivens* were line-level federal narcotics officers who operated under the legal mandate to enforce federal drug laws). Specifically, Defendants are federal correctional officers whose legal mandate is, among other things, to supervise inmates and manage the correctional facility. *See* 18 U.S.C. § 4042(a) (directing the Bureau of Prisons ("BOP") to manage and regulate federal correctional institutions and protect and discipline prisoners). As such, there is a meaningful legal distinction between the cases.

In sum, all of DeBenedetto's claims arise in a new context from the previous *Bivens* cases.

### B. Special Factors

The Court next asks whether there are special factors indicating that the Judiciary is less equipped than Congress to decide whether there should be a damages remedy. *Egbert*, 142 S. Ct. at 1804. Two such special factors exist here: (1) congressional inaction on creating a damages remedy for these types of claims against federal officials, and (2) alternative remedial processes to a damages remedy. *See Ziglar*, 582 U.S. at 137, 148.

With respect to prior congressional inaction on the issue of a damages remedy, the Supreme Court has found it significant that in the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, Congress had the opportunity to address prisoner abuse claims brought in federal court, yet the Act does not authorize an individual-capacity damages remedy against federal prison officials. *Ziglar*, 582 U.S. at 148. This might suggest that "Congress chose

not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.* at 149. Despite the Supreme Court not conclusively establishing that the PLRA's omission of a damages remedy is a special factor, the Supreme Court's subsequent emphasis on whether Congress is better equipped to create a damages remedy, *Egbert*, 142 S. Ct. at 1803, strongly indicates that the PLRA's omission is a special factor. This Court, therefore, considers it as such. *See Choice v. Michalak*, No. 21-CV-0060, 2022 WL 4079577, at *7–8 (N.D. Ill. Sept. 6, 2022) (noting that congressional silence in the PLRA regarding a standalone damages remedy for federal pretrial detainees and prisoners was a special factor counseling hesitation); *Liggins v. O'Sullivan*, No. 3:19-CV-50303, 2022 WL 787947, at *5 (N.D. Ill. Mar. 15, 2022) (same).

Turning to alternative remedial processes, the Supreme Court has suggested that a writ of habeas corpus and injunctive relief are alternative forms of relief for prisoners and pretrial detainees to challenge their conditions of confinement, both of which may foreclose a *Bivens* remedy. *See Ziglar*, 582 U.S. at 144–45, 148; *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("[U]nlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally.").[5]

---

[5] Relatedly, DeBenedetto's claims also arise in a new context because of the presence of potential special factors that prior *Bivens* cases—namely, *Carlson*—did not consider. In particular, (1) the existence of alternative remedies for prisoners to seek relief, such as injunctions and the writ of habeas corpus, and (2) the absence of a standalone damages remedy against federal prison officials in the PLRA. *See Ziglar*, 582 U.S. at 148–49; *see also Snowden*, 72 F.4th at 242, 244 (describing *Ziglar* as holding that the plaintiff's claim presented a new context from *Carlson* because the claim implicated a different constitutional right, alternative remedies were potentially available, and the PLRA suggested that Congress decided not to extend the *Carlson* damages remedy to other types of prisoner mistreatment claims).

Second, the BOP's administrative remedy program allows prisoners to file grievances to seek formal review of any issue relating to their confinement. *See* 28 C.F.R. § 542.10. As such, it is an alternative—albeit incomplete—method of relief for federal prisoners and pretrial detainees. *See Choice*, 2022 WL 4079577, at *6 (describing the BOP's administrative remedy program as an alternative remedy for prisoners to challenge issues with their confinement, and as, thus, a special factor); *see also Malesko*, 534 U.S. at 74 (noting that the BOP's administrative remedy program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring").

Third, the FTCA generally permits plaintiffs to sue the federal government for monetary damages for the tortious conduct of its employees when those employees acted within the scope of their employment. *See* 28 U.S.C. § 2674; *Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 721 (7th Cir. 2012). Accordingly, the FTCA is another alternative form of relief for a *Bivens* claim. *See McNeil v. Duda*, No. 3:22-CV-50096, 2023 WL 2587884, at *3–4 (N.D. Ill. Mar. 21, 2023) (finding the existence of statutory grievance procedures against FBI agents and the FTCA to be alternative remedies that precluded a *Bivens* remedy); *Gonzalez-Loza*, 2021 WL 5823512, at *4 (recognizing the FTCA as an alternative method of relief). That said, the Court acknowledges that those remedies may be woefully inadequate in comparison to a suit for monetary damages against individual officials who perpetrate constitutional violations. *Cf. Carlson*, 446 U.S. at 20–23 (explaining why the *Bivens* remedy is more effective than the FTCA); *Cohen*, 2022 WL 16925984, at *9 (noting that injunctions fail to provide redress for harms suffered prior to the issuance of the injunction and do little to deter future unconstitutional acts). And the Court fully appreciates DeBenedetto's point that the Court previously ruled that the BOP's administrative remedies were unavailable to him for purposes of the PLRA's

exhaustion requirement, and that the Court denied him leave to add an FTCA claim against the United States because he failed to exhaust his administrative remedies under the FTCA. (*See* 4/29/22 Mem. Op. at 15; 10/12/22 Minute Entry.)

Nonetheless, the salient question is not whether the existing remedies provide full relief or whether a court should provide a remedy for a wrong that would otherwise go unredressed; instead, a "court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Egbert*, 142 S. Ct. at 1804 (internal quotation marks and citations omitted); *see also Stennis*, 2023 WL 1319561, at *7 ("[E]ven if these alternatives to *Bivens* weren't available to Stennis or against these particular defendants, their existence alone is enough to bar an implied cause of action."). Further, the Supreme Court has made clear that courts must not "second-guess" the political branches' calculus of whether the existing remedial processes are sufficient to adequately deter unconstitutional acts of federal officers "by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807. Consequently, the existence of the alternative remedial schemes discussed above is another special factor that precludes a *Bivens* remedy.[6]

---

[6] To avoid dismissal, DeBenedetto argues that *Snowden* undermined the proposition that the FTCA and PLRA are special factors counselling hesitation in expanding the *Bivens* remedy. However, the Court does not find these arguments persuasive. As to the FTCA, DeBenedetto relies on the Seventh Circuit's rejection of the argument that the availability of a remedy under the FTCA was a special factor suggesting that the plaintiff's claim arose in a new context from *Bivens*. *See Snowden*, 72 F.4th at 246 n.4. More specifically, the Seventh Circuit noted that the FTCA "does not displace a *Bivens* claim in the narrow cases where it is available." *Id.* Yet the Seventh Circuit resolved the case at the new-context step of the *Bivens* framework and made clear that the FTCA "does not come into play" since the case did not present a new context. *Id.* Put differently, the Seventh Circuit said nothing about whether the FTCA can be a special factor counselling hesitation against authorizing a *Bivens* remedy for purposes of step two of the *Bivens* framework; rather, it appeared to address whether the FTCA is a potential special factor that previous *Bivens* cases did not consider for purposes of the new-context inquiry. With respect to the PLRA, DeBenedetto contends that the Seventh Circuit in *Snowden* reversed a district court's dismissal of the plaintiff's *Bivens* claim, where the lower court concluded that the PLRA's omission of a damages remedy was a special factor counselling hesitation. *See id.* at 241. But while the Seventh Circuit did

15

Because Defendants' *Bivens* argument is dispositive of all claims, the Court need not reach the qualified immunity issue. Thus, all counts against Defendants are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 210) is granted. This case is dismissed with prejudice. The Clerk will be directed to enter Judgment in favor of Defendants.

Dated:  September 29, 2023

_____
Andrea R. Wood
United States District Judge

---

reverse the district court's decision, it never reached the special-factor step of the *Bivens* inquiry, nor did it state that the PLRA is not a special factor.